### PEOPLE v McMASTER

Docket No. 48528. Submitted October 9, 1980, at Detroit.—Decided
    April 8, 1981. Leave to appeal denied, 411 Mich 988.

    Robert McMaster, charged in Wayne Circuit Court with assault
    with intent to murder and possession of a firearm while in the
    commission of a felony, was convicted by a jury of felonious
    assault and possession of a firearm while in the commission of
    a felony. Defendant received a suspended sentence for the
    felonious assault conviction but was sentenced to the manda-
    tory two-year prison term for the felony-firearm violation,
    Charles Kaufman, J. Defendant was arrested following a do-
    mestic argument and physical fight with his wife. Mrs. Mc-
    Master fled the apartment after defendant drew a handgun
    from under the couch, began to load it and threatened to kill
    her. After Mrs. McMaster had fled, defendant fired a shot at
    the door through which she had exited. Defendant appeals.
    *Held:*

    1. Under a local court rule, the party seeking an adjourn-
    ment of a trial of a criminal case must file a written motion
    showing good cause why the adjournment should be granted

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 31 *et seq.*

[2] 5 Am Jur 2d, Appeal and Error § 891 *et seq.*

[3] 6 Am Jur 2d, Assault and Battery §§ 2-7.

[4] 6 Am Jur 2d, Assault and Battery § 6.

[5] 16A Am Jur 2d, Constitutional Law § 638.

[6] 75 Am Jur 2d, Trial §§ 574, 575.

[7, 8] 21 Am Jur 2d, Criminal Law § 107.

    Effect of voluntary drug intoxication upon criminal responsibility.
      73 ALR3d 98.

    Modern status of the rules as to voluntary intoxication as defense
      to criminal charge. 8 ALR3d 1236.

[8] 6 Am Jur 2d, Assault and Battery §§ 48, 53.

[9, 10] 6 Am Jur 2d, Assault and Battery §§ 2-6, 13.

    What constitutes "imminently dangerous" within homicide statute.
      67 ALR3d 900.

[11] 6 Am Jur 2d, Assault and Battery § 20.

    40 Am Jur 2d, Homicide §§ 10, 570, 572, 576, 578.

    65 Am Jur 2d, Rape §§ 20-24.

before the presiding judge may grant an adjournment. A motion was made and denied but, because the record of the motion hearing has not been made available, the Court has nothing to review to determine whether an abuse of discretion occurred.

2. Defense counsel failed to give timely notice of his intention to raise the issue of defendant's sanity or diminished capacity. This failure may have deprived defendant of a valid defense because exclusion of evidence purporting to establish insanity is mandated if the requisite 30-day notice of such intent is not given. Counsel's failure to pursue this defense was excusable, however. His belief that the charges would be dismissed because of Mrs. McMaster's reluctance to pursue the matter was well-founded.

3. A miscarriage of justice occurred by the refusal of the trial court to give a requested jury instruction on intoxication as it relates to specific intent crimes. The trial court should either have given the intoxication instruction or should have clarified the intent element of felonious assault. The jury in a felonious assault trial should be instructed that there must be either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery. The only allusion to specific intent had been made by the trial court in its instructions on the charged offense of assault with intent to murder and the lesser included offense of assault with intent to do great bodily harm less than murder. A trial court is required to charge the jury concerning the law applicable to the case and, since defendant's defense at trial concerned the absence of intent, the improper instruction went to a controlling issue in the case.

Reversed and remanded for trial on the charge of felonious assault.

D. C. RILEY, P.J., concurred.

MACKENZIE, J., dissented from the holding that felonious assault requires proof of a specific intent which may be negated by evidence of defendant's voluntary intoxication. She contends that simple assault and felonious assault are not specific intent crimes but are, rather, general intent crimes and that voluntary intoxication should not be an available defense to simple assault or felonious assault. Further, she argues that even if simple assault and felonious assault are deemed to be specific intent crimes, evidence of voluntary intoxication should not be admissible to negate the intent requirement. She would hold that the trial court's failure to instruct on the defense of voluntary intoxication was harmless error. However, because of her belief that the failure to file notice of insanity was a serious

mistake and that defendant was reasonably likely to have been acquitted but for this error, she would reverse and remand for a new trial.

1. CRIMINAL LAW — PRETRIAL PROCEDURE — DEFENSES — INSANITY — STATUTES.

A defendant in a felony case who seeks to offer evidence purporting to establish insanity at the time of commission of an alleged offense must give written notice of his intention to assert such a defense not less than 30 days before the date set for trial (MCL 768.20a; MSA 28.1043[1]).

2. APPEAL — JURY INSTRUCTIONS — COURT RULES.

Appellate review of alleged errors in a trial court's jury charge requires that 1) the alleged errors were objected to by trial counsel before the jury retired to deliberate or 2) that a miscarriage of justice has resulted from the giving of the erroneous instruction (GCR 1963, 516.2).

3. ASSAULT AND BATTERY — ELEMENTS OF ASSAULT.

A simple criminal assault is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery.

4. ASSAULT AND BATTERY — FELONIOUS ASSAULT — JURY INSTRUCTIONS.

The jury in a prosecution for felonious assault must be instructed that the defendant must have had an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery before he may be found guilty of the charged offense.

5. COURTS — SUPREME COURT — RETROACTIVITY.

A Supreme Court decision which does not announce a new rule but merely clarifies existing law is entitled to retroactive effect.

6. CRIMINAL LAW — JURY INSTRUCTIONS.

A trial court in a criminal prosecution is required to charge the jury concerning the law applicable to the case.

DISSENT BY MACKENZIE, J.

7. CRIMINAL LAW — DEFENSES — INTOXICATION.

*Voluntary intoxication is a defense to some offenses where the intoxication is of a degree which enables a jury to say that the accused was incapable of forming the specific and requisite intent.*

8. ASSAULT AND BATTERY — FELONIOUS ASSAULT — DEFENSES — INTOXICATION.

*The defense of voluntary intoxication is not available to a charge of felonious assault because felonious assault is not a specific intent crime but rather a simple assault committed with a dangerous weapon.*

9. ASSAULT AND BATTERY — ELEMENTS OF ASSAULT.

*An assault is committed whenever a defendant does an unlawful act which either constitutes an attempt to commit a battery upon his victim or results in placing the victim in reasonable fear of an immediate injury; it is immaterial whether or not the defendant intends to do bodily injury to the victim.*

10. ASSAULT AND BATTERY — ELEMENTS OF ASSAULT.

*The critical inquiry in determining if a defendant is guilty of assault is whether he intentionally attempted or threatened to do violence upon the person of another and either 1) had the ability to carry out the threat or 2) his conduct reasonably placed the victim in fear of an immediate battery; it is not necessary to show that the defendant intended to cause his victim any particular bodily harm, and, as a matter of policy, the defendant should be liable for an assault where he actually intends no bodily harm, but threatens the victim, who is then placed in reasonable fear of harm.*

11. ASSAULT AND BATTERY — SPECIFIC INTENT.

*The specific intent doctrine was only intended to be used to negate evidence of an intent beyond the consequences of bodily injury or fright resulting from an assault, such as where the assault was done with intent to murder or rape.*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy L. Cronin,* Assistant Prosecuting Attorney, for the people.

*Lawrence R. Greene,* for defendant on appeal.

Before: D. C. RILEY, P.J., and N. J. KAUFMAN and MacKENZIE, JJ.

N. J. KAUFMAN, J. Defendant was initially

charged with assault with intent to murder, MCL 750.83; MSA 28.278, and possession of a firearm while in the commission of a felony, MCL 750.227b; MSA 28.424(2). He was convicted on September 10, 1979, by a Wayne County Circuit Court jury of felonious assault, MCL 750.82; MSA 28.277, and possession of a firearm while in the commission of a felony. Defendant received a suspended sentence for the felonious assault conviction but was sentenced to the mandatory two-year prison term for the felony-firearm violation. Defendant appeals as of right, pursuant to GCR 1963, 806.1.

The charges in the instant case arose out of a domestic argument which culminated in a shooting. In the course of an argument and physical fight with his wife, defendant drew a handgun from under the couch, began to load it and threatened to kill his wife. Complainant fled from the apartment and defendant fired a shot at the door through which she had exited.

Of the three issues raised by defendant on appeal, we deem only one to be meritorious. There is, however, an issue which we feel compelled to raise *sua sponte* which we believe is dispositive of this case.

Defendant contends that the trial judge abused his discretion in denying defendant's request for a continuance. Defendant alleges that defense counsel expected that the trial would not proceed as scheduled, believing that defendant and his wife had reconciled. When the requested continuance was . denied, defendant claims he was forced to proceed to trial without a valid defense, that of diminished capacity.

Wayne County Circuit Court Rule 14.9 states:

"No trial of a criminal case shall be adjourned except

by the Presiding Judge for good cause shown upon written motion of the party seeking the adjournment."

Thus, it appears that under the local court rule, the trial judge had no discretion to grant the requested continuance. However, a motion was made before the Presiding Judge and was denied. The record of that hearing has not been made available to this Court and we, therefore, have nothing to review.

In any case, the issue raised by defendant in regard to the denial of the continuance should more properly be characterized as the denial of effective assistance of counsel. It is defendant's contention that the failure of his counsel to give timely notice of his intention to raise the issue of defendant's sanity or diminished capacity as required by MCL 768.20a; MSA 28.1043(1) may have deprived defendant of a valid defense. Without the requisite 30-day notice, the statute mandates the exclusion of evidence purporting to establish insanity. MCL 768.21; MSA 28.1044.

Counsel's reason for not providing the appropriate notice was his belief that the charges against defendant would be dismissed because of complainant's reluctance to pursue the matter. We believe that counsel's opinion was well-founded. Defendant had reconciled with his wife. She had driven him to court on the date set for trial and stated that it was her intention to drive him home and to allow him to remain with her if he refrained from drinking. Under the standards of *People v Garcia*, 398 Mich 250; 247 NW2d 547 (1976), and *People v Degraffenreid*, 19 Mich App 702; 173 NW2d 317 (1969), we believe that counsel's failure to pursue the available defense was excusable.

We believe the following issue is dispositive of this case. After the judge charged the jury, defense counsel requested an instruction on intoxication as

it relates to specific intent crimes. Although the court asked the attorneys to approach the bench to discuss this request, the court's ruling does not appear on the record. However, since no such instruction was given, the request was obviously denied. We agree that there was no objection to the court's jury charge. GCR 1963, 516.2 requires that counsel object to alleged errors before the jury retires to deliberate if he expects to rely upon such alleged errors on appeal. This no objection-no review rule applies unless there is a miscarriage of justice. *People v Fry,* 27 Mich App 169; 183 NW2d 377 (1970), *lv den* 384 Mich 826 (1971), *People v Turner,* 31 Mich App 44; 187 NW2d 241 (1971). Although there was no objection to the judge's apparent refusal to give the intoxication instruction, and, in fact, this issue was not even raised on appeal, we feel that in light of the Supreme Court's recent decision in *People v Joeseype Johnson,* 407 Mich 196; 284 NW2d 718 (1979), a miscarriage of justice did, in fact, occur in the instant case.

We acknowledge that the jury did not convict defendant of the charged offense, assault with intent to do murder, MCL 750.83; MSA 28.278, or of the lesser included offense, assault with intent to do great bodily harm, MCL 750.84; MSA 28.279. Prior to the *Johnson* decision, we could then have said that failure to instruct on the intoxication defense in regard to these specific intent crimes was harmless beyond a reasonable doubt. However, *People v Johnson, supra,* strongly suggests that felonious assault is also a specific intent crime.

In the memorandum opinion signed by seven Justices, the Supreme Court stated:

"1) a simple criminal assault 'is made out from either

an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery', *People v Sanford,* 402 Mich 460, 479; 265 NW2d 1 (1978),

"2) *the jury should be instructed that there must be either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery,*

"3) *the instruction in* Johnson *was deficient in two respects: it failed adequately to inform the jury of the intent requirement* and it neglected to present the alternative 'reasonable apprehension of receiving an immediate battery' form of felonious assault; the jurors in *Ring* should be instructed that defendant can be convicted if he intended to injure the victim or put him in reasonable apprehension of receiving an immediate battery." *Johnson, supra,* 210. (Emphasis supplied.)

The Court in *Johnson* further stated:

"*Johnson* did not raise an intoxication defense and the question whether assault or felonious assault are specific intent crimes for the purpose of the voluntary intoxication defense is not raised by the facts and has not been briefed or argued and is not before us; we intimate no opinion on that question." *Id.*

In the instant case, however, the intoxication defense was raised and the instruction requested. Although we also do not intimate an opinion on whether voluntary intoxication would negate the crime of felonious assault, we nevertheless feel that the trial court in the instant case should either have given the intoxication instruction or should have clarified the intent element of felonious assault, according to *Johnson, supra,* especially when the jury requested a rereading of that statute.

The trial court gave an instruction which closely paralleled CJI 17:4:01, the recommended jury in-

struction on felonious assault. In response to a request from the jury for a rereading of the felonious assault statute, the Court responded as follows:

"THE COURT: Okay. The felonious assault statute is really entitled: 'Assault with a dangerous weapon.' We commonly call it the felony assault statute. And it provides that any person who shall assault another with a gun or other dangerous weapon, but without intending to commit the crime of murder and without intending to inflict great bodily harm less than the crime of murder, shall be guilty of felonious assault.

"And you want to know what the prosecution must prove. Okay. Now, for this charge the prosecution must prove beyond a reasonable doubt first that the defendant assaulted Henrietta McMaster. And an assault is an attempt or threat with force and violence to do immediate bodily harm to another by one who has the present means of doing such harm; and second, that the defendant committed such assault by the use of a dangerous weapon; that is, as alleged in this case, a revolver or pistol. Now, a gun, as I told you, is a—or revolver or pistol is a firearm and a firearm includes any weapon from which a dangerous object may be shot or propelled by the use of explosives. Okay?"

The only allusion to specific intent had been made by the court in its instructions on the charged offense of assault with intent to murder and the lesser included offense of assault with intent to do great bodily harm less than murder.

This Court is certainly aware that at the time of the trial in the instant case, the trial judge did not have the benefit of the Supreme Court decision in *People v Joeseype Johnson,* 407 Mich 196; 284 NW2d 718 (1979). In that case, the trial court refused defendant's request to instruct the jury that the crime of felonious assault includes the specific intent to inflict an injury on another and instead instructed the jury that a felonious assault

must be an "intentional assault". *Johnson, supra,* 255 (opinion by LEVIN, J.). On appeal, the Supreme Court stated that the trial court's instruction constituted reversible error in that it failed to adequately inform the jury of the intent requirement. The Court held that "the jury should be instructed that there must be either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery". *Johnson, supra,* 210. In the instant case, the instruction given by the trial court was incorrect under *Johnson.*

The pivotal question thus presented is whether the intent requirements set forth in *Johnson* are applicable to the case at bar, in which the trial concluded prior to the decisional date of Johnson. We answer affirmatively and therefore reverse defendant's conviction. See *People v Szymanski,* 102 Mich App 745; 302 NW2d 316 (1981). See also *People v Ideis,* 101 Mich App 179; 300 NW2d 489 (1980).

In his concurring opinion in *Johnson,* Justice RYAN, joined by Justice FITZGERALD, stated that the decision in *Johnson* was a reiteration of the legal principles set forth in *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978), which was, in turn, merely a clarification and restatment of the law recited in *People v Carlson,* 160 Mich 426; 125 NW 361 (1910). *Johnson, supra,* 228-229. We agree and therefore find the instructions mandated in *Johnson* fully applicable to the instant case.

We acknowledge that defendant did not request the instruction mandated by *Johnson.* We are not, however, precluded from considering this issue on appeal. The trial court is required to charge the jury concerning the law applicable to the case. *People v Liggett,* 378 Mich 706, 714; 148 NW2d

784 (1967), *People v Oberstaedt,* 372 Mich 521, 526; 127 NW2d 354 (1964), *People v Lewis,* 91 Mich App 542; 283 NW2d 790 (1979). Since defendant's defense at trial concerned the absence of intent, the improper instruction went to a controlling issue in the case.

Reversed and remanded for trial on the charge of felonious assault.

D. C. RILEY, P.J., concurred.

MacKENZIE, J. *(dissenting).* I respectfully dissent from the holding of the majority that felonious assault requires proof of a specific intent which may be negated by evidence of defendant's voluntary intoxication.

The issue of the requisite intent for either simple criminal assault or felonious assault was recently explored by our Supreme Court in *People v Joeseype Johnson,* 407 Mich 196, 210; 284 NW2d 718 (1979), the majority being able to agree only on the following:

"1) a simple criminal assault 'is made out from either an attempt to commit a battery or an unlawful act which places another in reasonable apprehension of receiving an immediate battery', *People v Sanford,* 402 Mich 460, 479; 265 NW2d 1 (1978),

"2) the jury should be instructed that there must be either an intent to injure or an intent to put the victim in reasonable fear or apprehension of an immediate battery,

"3) the instruction in *Johnson* was deficient in two respects: it failed adequately to inform the jury of the intent requirement and it neglected to present the alternative 'reasonable apprehension of receiving an immediate battery' form of felonious assault; the jurors in *Ring* should be instructed that defendant can be convicted if he intended to injure the victim or put him

in reasonable apprehension of receiving an immediate battery.

"We reverse *Johnson* and remand for a new trial and affirm the trial court's decision in *Ring* as modified and remand for trial.

"*Johnson* did not raise an intoxication defense and the question whether assault or felonious assault are specific intent crimes for the purpose of the voluntary intoxication defense is not raised by the facts and has not been briefed or argued and is not before us; we intimate no opinion on that question."

The fact that the Court avoided labelling assault as a specific intent crime and declined to decide whether voluntary intoxication is a defense leads me to conclude that *Joeseype Johnson* did not foreclose consideration of that issue.

In *People v Walker,* 38 Mich 156, 158 (1878), Justice COOLEY stated what has become the rule for determining the circumstances under which voluntary intoxication will be a defense:

"While it is true that drunkenness cannot excuse crime, it is equally true that when a certain intent is a necessary element in a crime, the crime cannot have been committed when the intent did not exist."

In *Walker,* Justice COOLEY cited *Roberts v The People,* 19 Mich 401 (1870), as the source of the rule. In *Roberts,* the defendant was convicted of assault with intent to murder for firing two shots at the complainant, both of which missed him. In considering the issue, the Court began by accepting the proposition that drunkenness would not excuse the *assault. Roberts, supra,* 416. In *People v Comstock,* 115 Mich 305, 312; 73 NW 245 (1897), where defendant's conviction for intentional undue extension of credit was reversed for failure to instruct on specific intent to embezzle, cheat, or

defraud, the Court remarked as follows regarding specific intent:

"It is argued that the general criminal intent evinced by the violation of § 52 is sufficient. In crimes of violence which do not involve a specific intent, the general intent is sufficient; as in murder, when the malice which will justify a conviction need not include a design to take life. But in burglary, where there must be an intent to commit a felony, and in larceny, where there must be an intent to deprive the owner of his property, the specific intent must appear, and, although the breaking or taking of personal property be unlawful, amounting possibly to a trespass, the offense is not made out if the specific intent be wanting; as when one broke and entered intending to commit a simple assault and battery. Voluntary intoxication may be a defense to persons charged with some offenses, where it is of a degree which enables a jury to say that the accused was incapable of forming the specific and requisite intent. *Thus an assault and battery is not excused by voluntary drunkenness, but the more aggravated offenses depend upon the accompanying intent prescribed in each case, and anything that tends to show its absence is a defense.* A man could not be convicted of assault with intent to murder if his design was shown to be merely to deprive his victim of an arm or leg, to cut off his ear, or put out an eye. In either of these cases it would be competent for the defendant to prove that his actual and only intent was another than that charged, although unlawful and even criminal; and a charge that intent to commit rape might be found notwithstanding it was made clear that the offense, if completed, would have been no more than incest, upon the ground that the attempt to commit incest was an unlawful and criminal act, and therefore no excuse, would be error. The foregoing principles are fully supported by our own decisions. *Roberts v People,* 19 Mich 414; *People v Sweeney,* 55 Mich 586; *People v Lilley,* 43 Mich 521; *People v Umlauf,* 88 Mich 274." (Emphasis supplied.)

Both the lead opinion in *Joeseype Johnson* written by Justice WILLIAMS and the opinion written by Justice LEVIN discuss four Michigan cases to consider in determining the requisite intent for simple assault, as well as felonious assault: *People v Doud,* 223 Mich 120; 193 NW 884 (1923), *People v Burk,* 238 Mich 485; 213 NW 717 (1927), *People v Counts,* 318 Mich 45; 27 NW2d 338 (1947), and *People v Sanford,* 402 Mich 460; 265 NW2d 1 (1978). As is obvious from the divergent views expressed in the three opinions in *Joeseype Johnson,* the above four cases can be analyzed to support or detract from the theory that assault is a specific intent crime. Critically, however, none of the cases dealt with a factual situation where a defendant raised voluntary intoxication as a defense. Where voluntary intoxication has been raised as a defense, this Court has followed the rule in *Burk* that only general intent is required; thus, defendants were not allowed to negate that intent by introducing evidence of voluntary intoxication. *People v Richard Johnson,* 42 Mich App 544; 202 NW2d 340 (1972), *People v Rohr,* 45 Mich App 535; 206 NW2d 788 (1973), *People v Clark,* 48 Mich App 645; 210 NW2d 906 (1973).

I agree with the lead opinion in *Joeseype Johnson* that an assault is committed whenever a defendant does an unlawful act which either constitutes an attempt to commit a battery upon his victim or *results* in placing the victim in reasonable fear of an immediate injury. The fact that menacing—placing the victim in reasonable fear of an immediate injury—was recognized in *Sanford* as an assault does not, in my view, require a showing that the accused "specifically" intended to scare his victim.

"The significance of this holding, obviously, is that

the second kind of criminal assault focuses on whether the assaultee was by defendant's acts put 'in reasonable apprehension of receiving an immediate battery', and, if he was, it would be immaterial whether or not the defendant intended to do bodily injury to the assaultee." *Joeseype Johnson, supra,* 223.

If, as suggested by the opinion of Justice RYAN and Justice FITZGERALD in *Joeseype Johnson,* to be convicted of the menacing type of assault the accused must "specifically" intend to scare his victim, why is it necessary that the victim's fear of immediate injury be reasonable? The accused's intentional act, such as aiming a gun at his victim and threatening to shoot, should be sufficient without an instruction that the accused must have intended to scare the victim.

From an analysis of Michigan law prior to *Joeseype Johnson,* I conclude that neither simple assault nor felonious assault was viewed as a crime requiring proof of a specific intent. The focus of the courts was not whether a defendant intended the particular consequences which resulted from his actions. The critical inquiry was whether a defendant intentionally attempted *or* threatened to do violence upon the person of another and either (1) had the ability to carry out the threat or (2) his conduct reasonably placed the victim in fear of an immediate battery. It is not and should not be necessary to show that a defendant intends to cause his victim any *particular* bodily harm. As a matter of policy, a defendant should be liable for an assault where he actually intends no bodily harm, but threatens the victim, who is then placed in reasonable fear of harm.

Because an assault is defined as either an attempt to commit a battery or a threat of violence which places the victim in reasonable fear of

bodily injury, it is difficult and perhaps anomalous to fit assault neatly into either the general or specific intent category. Indeed, the exact meaning of the terms "general" and "specific intent" has caused considerable difference of opinion; see Justice LEVIN's opinion in *Joeseype Johnson* as opposed to Justice RYAN's opinion. If a specific intent crime is viewed as requiring that the actor intend the particular consequences which result, then under either definition in *Joeseype Johnson*, assault could be construed as a specific intent crime. However, since assault is equally capable of being defined in terms of the illegal act itself with the present or apparent ability to carry it out, a general intent only is required.

Notwithstanding, one should not lose sight of why these concepts evolved. According to Chief Justice Traynor of the Supreme Court of California, writing for the majority in *People v Hood,* 1 Cal 3d 444, 455-457; 82 Cal Rptr 618; 462 P2d 370, 377-378 (1969):

"The distinction between specific and general intent crimes evolved as a judicial response to the problem of the intoxicated offender. That problem is to reconcile two competing theories of what is just in the treatment of those who commit crimes while intoxicated. On the one hand, the moral culpability of a drunken criminal is frequently less than that of a sober person effecting a like injury. On the other hand, it is commonly felt that a person who voluntarily gets drunk and while in that state commits a crime should not escape the consequences. (See Hall, General Principles of Criminal Law [2d ed, 1960], p 537.)

"Before the nineteenth century, the common law refused to give any effect to the fact that an accused committed a crime while intoxicated. The judges were apparently troubled by this rigid traditional rule, however, for there were a number of attempts during the early part of the nineteenth century to arrive at a more

humane, yet workable, doctrine. The theory that these judges explored was that evidence of intoxication could be considered to negate intent, whenever intent was an element of the crime charged. As Professor Hall notes, however, such an exculpatory doctrine could eventually have undermined the traditional rule entirely, since some form of *mens rea* is a requisite of all but strict liability offenses. (Hall, Intoxication and Criminal Responsibility, 57 Harv L Rev 1045, 1049.) To limit the operation of the doctrine and achieve a compromise between the conflicting feelings of sympathy and reprobation for the intoxicated offender, later courts both in England and this country drew a distinction between the so-called specific intent and general intent crimes.

"Specific and general intent have been notoriously difficult terms to define and apply, and a number of textwriters recommend that they be abandoned altogether. (Hall, General Principles of Criminal Law, *supra*, p 142; Williams, Criminal Law—The General Part [2d ed, 1961] § 21, p 49.) Too often the characterization of a particular crime as one of specific or general intent is determined solely by the presence or absence of words describing psychological phenomena—'intent' or 'malice,' for example—in the statutory language of defining the crime. When the definition of a crime consists of only the description of a particular act, without reference to intent to do a further act or achieve a future consequence, we ask whether the defendant intended to do the proscribed act. This intention is deemed to be a general criminal intent. When the definition refers to defendant's intent to do some further act or achieve some additional consequence, the crime is deemed to be one of specific intent. There is no real difference, however, only a linguistic one, between an intent to do an act already performed and an intent to do that same act in the future." (Footnotes omitted.)

In *Hood,* a case similar to the case at bar, the Court was confronted with the question of whether evidence of voluntary intoxication should be admissible to negate the intent required for an assault with a deadly weapon upon a peace officer.

Concluding that simple assault and assault with a deadly weapon could be characterized as specific intent crimes or general intent crimes under the definitions of those terms, the Court opted to rest its decision on other considerations, to wit:

"A compelling consideration is the effect of alcohol on human behavior. A significant effect of alcohol is to distort judgment and relax the controls on aggressive and anti-social impulses. (Beck and Parker, The Intoxicated Offender—A Problem of Responsibility [1966], 44 Can B Rev 563, 570-573; Muelberger, Medico-Legal Aspects of Alcohol Intoxication [1956], 35 Mich St B J 36, 40-41.) Alcohol apparently has less effect on the ability to engage in simple goal-directed behavior, although it may impair the efficiency of that behavior. In other words, a drunk man is capable of forming an intent to do something simple, such as strike another, unless he is so drunk that he has reached the stage of unconsciousness. What he is not as capable as a sober man of doing is exercising judgment about the social consequences of .his acts or controlling his impulses toward anti-social acts. He is more likely to act rashly and impulsively and to be susceptible to passion and anger. *It would therefore be anomalous to allow evidence of intoxication to relieve a man of responsibility for the crimes of assault with a deadly weapon or simple assault, which are so frequently committed in just such a manner.* As the court said in *Parker v United States,* (1966) 123 US App DC 343, 359 F 2d 1009, 1012-1013, 'Whatever ambiguities there may be in distinguishing between specific and general intent to determine whether drunkenness constitutes a defense, an offense of this nature is not one which requires an intent that is susceptible to negation through a showing of voluntary intoxication.' " *Hood, supra,* 458. (Emphasis supplied.)

Holding that voluntary intoxication is no defense to simple assault or felonious assault would not alter the treatment of those assault crimes

viewed as specific intent crimes, such as assault with intent to rob, assault with intent to murder, assault with intent to do great bodily harm less than murder, assault with intent to rape, etc. I agree with Justice Traynor's conclusion in *Hood* that "[t]he difference in mental activity between formulating an intent to commit a battery and formulating an intent to commit a battery for the purpose of raping and killing may be slight, but it is sufficient to justify drawing a line between them and considering evidence of intoxication in the one case and disregarding it in the other". *Hood, supra,* 458. (Footnote omitted.) See also *People v Rocha,* 3 Cal 3d 893; 92 Cal Rptr 172; 479 P2d 372 (1971), where the Supreme Court of California held that assault with a deadly weapon constituted a general intent crime and evidence of voluntary intoxication was not a defense.

In summary, even if assault is now viewed as a specific intent crime, I do not believe evidence of voluntary intoxication should be admissible to negate the intent requirement. The specific intent doctrine was only intended to be used to negate evidence of an intent beyond the consequences of bodily injury or fright resulting from an assault, such as where the assault was done with intent to murder or rape. It is inadequate to suggest that criminal responsibility be limited to a misdemeanor. MCL 750.233; MSA 28.430. Therefore, as defendant was convicted of felonious assault, I would hold the trial court's failure to instruct on the defense of voluntary intoxication was harmless error.

The record indicates that defendant's trial counsel failed to file the requisite 30-day notice of his intent to raise an insanity defense. MCL 768.20a; MSA 28.1043(1). The issue is whether this consti-

tuted a serious mistake and but for this mistake there was a great likelihood that defendant would not have been convicted. *People v Degraffenreid,* 19 Mich App 702; 173 NW2d 317 (1969), *People v Garcia,* 398 Mich 250, 264; 247 NW2d 547 (1976).

In the factual setting therein, it appears that the failure to file notice of insanity was a serious mistake and that defendant was reasonably likely to have been acquitted but for this error. Statements in the record and testimony of defendant's wife at trial indicate that defendant had a long history of chronic alcoholism and was prone to violence during bouts of severe intoxication. Therefore, assuming the notice had been filed and the defense presented, it was reasonably likely that defendant would have been found not guilty by reason of (alcohol-induced) insanity. Counsel's explanation that he failed to file the requisite notice due to his client's belief that the charge would be dropped remains unsubstantiated by any statement from the prosecutor's office. I would reverse and remand for a new trial.